UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Criminal Case Nos. 21-20331 |
| | 11-20631 |
| | 09-20614 |
| Plaintiff, | |
| v. | Civil Case Nos. 25-cv-10611 |
| | 25-cv-10612 |
| ANTONIO LYNN FLUKER, JR., | 25-cv-10609 |
| Defendant. | Hon. F. Kay Behm |
| _____________________________ / | United States District Judge |

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS UNDER 28 U.S.C. § 2255**

Defendant Antonio Lynn Fluker, Jr. has submitted a motion under 28 U.S.C. § 2255 raising a laundry list of complaints that he characterizes as claims of ineffective assistance of counsel. As set forth below, Fluker's motion at Criminal Case No. 21-20331, ECF No. 180 is deemed the operative motion, and that motion is denied because he fails to establish either prejudice or deficient performance by counsel, because he procedurally defaulted on his claims by failing to raise them on direct appeal, and because his claims were waived by the valid appeal and collateral review waivers contained in his plea agreement.

No evidentiary hearing is required and no certificate of appealability will be issued.

As a result, Fluker's motion to compel discovery (ECF No. 194) is denied, and the court requires a supplemental brief from the Government regarding Fluker's motion for return of property (ECF No. 190).

## I. FACTUAL AND PROCEDURAL HISTORY

As set forth in the Presentence Report and plea agreement in Case No. 21-cr-20331 (ECF No. 131, 146),[1] Fluker engaged in an extensive course of fraudulent conduct between the time when he began his supervised release in 2018 until the time of his arrest in 2021. This conduct included pandemic loan fraud, bank fraud, and identity theft, amounting to millions of dollars in losses.

At the time of this fraudulent conduct, Fluker was under supervised release for two prior federal convictions involving fraud in case numbers 09-cr-20614 and 11-cr-20631. Supervised release violation petitions were filed in those two cases, as well as new charges

[1] Except as otherwise noted, the court uses the ECF numbers from the most recent criminal case, Case No. 21-cr-20331. Any document from one of the earlier cases is denoted first by the case number.

for fraud in 21-cr-20331. Additional background on Fluker's 2009 and 2011 cases are also set forth in Fluker's presentence report in his 2011 case. *See* ECF No. 146, PageID.910-913.

Fluker pleaded guilty in case number 21-cr-20331 to wire fraud (Count 1) and money laundering (Count 14) pursuant to a Rule 11(c)(1)(C) plea agreement to an agreed sentence of 135 months. ECF No. 131, PageID.731, 746; ECF No. 165, PageID.1029, 1045. His plea agreement contained a detailed statement of facts that were agreed between the parties. ECF No. 131, PageID.734-739. In addition, although the parties agreed to a set term of 135 months of imprisonment, Fluker agreed to recommend the application of certain guidelines enhancements, including 2B1.1(b)(1)(I) for loss of more than $1,500,000 and less than $3,500,000; and 2B1.1(b)(17)(A) for deriving more than $1,000,000 in gross receipts as a result of the offense. *Id.* at PageID.744-745. He also agreed not to take any positions on the guidelines that were inconsistent with these recommendations, and that he had no right to withdraw from the agreement based on the court's guidelines findings. *Id.*

Fluker also agreed that there were 12 identified victims in this case: the U.S. Treasury, banks B-1, B-2, B-3, B-4, B-5, B-6, and B-7, and victims V-1, V-2, V-3, and V-4. *Id.* at PageID.734-739, 748; ECF No. 165, 1029-1038. He also agreed to pay restitution to each of these identified victims, with the court to determine the amounts that they were owed at sentencing. ECF No. 131, PageID.748. He further agreed that restitution would be due and payable immediately after judgment was entered, and subject to immediate enforcement. *Id.* He also agreed to the entry of a $2,500,000 money judgment against him, the forfeiture of specific identified amounts, the entry of a preliminary order of forfeiture with respect to these amounts, and the forfeiture of his personal property as substitute assets. *Id.* at PageID.749-754. Fluker also waived "any right he may have to appeal his conviction on any grounds," and if his sentence of imprisonment did not exceed 135 months, then he also waived his right to appeal his sentence on any grounds. *Id.* at PageID.754. Additionally, Fluker waived his right to raise claims challenging his conviction or sentence on collateral review under 28 U.S.C. § 2255, except for claims of ineffective assistance of

counsel, prosecutorial misconduct, or with respect to compassionate release claims. *Id.* at PageID.754-755.

At his plea hearing, the government stated the factual basis from the plea agreement, including regarding the number of victims, on the record. ECF No. 165, PageID.1031-1036. And the government also orally placed on the record the court's obligation to order restitution to every identifiable victim of the defendant's offenses, including the same banks and victims listed in the plea agreement. *Id.* at PageID.1038.

Fluker affirmed multiple times at his plea hearing that he agreed with the factual basis in his plea and with the information placed on the record by the government during the hearing. For instance, after the government proffered the factual basis and plea terms on the record, the following exchange took place:

> COURT: […] Mr. Fluker, was that a complete and accurate recitation of your plea agreement?
>
> FLUKER: Yeah.
>
> […]
>
> COURT: Is there anything that surprised you about what [the government] said?
>
> FLUKER: Not really.

> COURT: Those are all terms that you discussed at length with your attorneys?
>
> FLUKER: Yeah.

ECF No. 165, PageID.1040.

Later in the proceeding, Fluker again affirmed his agreement with the facts alleged in the plea agreement and at the plea hearing:

> COURT: Mr. Mihas, would you establish in your client's own testimony the factual basis […]? […]
>
> MIHAS: Your Honor, we're willing to stipulate to the recitation that the Government made.
>
> […]
>
> COURT: Mr. Fluker, you're willing to stipulate to the factual basis as stated in the plea agreement?
>
> FLUKER: Yeah.
>
> […]
>
> GOV'T: Mr. Fluker, did you hear me read the factual basis here today?
>
> FLUKER: Yeah, I did.
>
> GOV'T: Is that a fair, true and accurate description of the offenses?
>
> FLUKER: Yes. It's in the agreement. Yeah.

*Id.*, PageID.1046.

Based on the entirety of the plea proceedings, this court accepted Fluker's guilty pleas, finding that Fluker was fully competent and

capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that his plea was knowing and voluntary and supported by an independent factual basis containing the essential elements of each offense. *Id.* at PageID.1047.

Fluker was sentenced on March 19, 2024 pursuant to his Rule 11 plea agreement to the agreed term of 135 months' imprisonment, which was divided into a sentence of 135 on Count 1 and 120 months concurrent on Count 14. *See* ECF No. 161, p.3-24; ECF No. 157. The court also sentenced Fluker to 3 years of supervised release, entered the money judgment in the amount of $2,500,000 and forfeiture as agreed in Fluker's plea agreement, and ordered specified amounts of restitution to the six victims who made restitution claims. ECF No. 157. Fluker also entered guilty pleas in his supervised release cases on March 19, 2024, and he was sentenced to 24 months on each case, to be served concurrently with each other and with his 135-month sentence in his 2021 case. ECF No. 161, p.24-37.

Fluker first filed but then voluntarily dismissed his appeal to the Sixth Circuit. *See* ECF No. 169.

## II. STANDARD OF REVIEW

### A. Procedural Default

The general rule is that claims not raised on direct appeal may not be raised on collateral review unless the defendant shows cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). For example, a challenge to the voluntary and knowing nature of a guilty plea must ordinarily be raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). If a defendant fails to raise this issue on direct appeal, he may seek collateral review only if he establishes either cause and prejudice for his procedural default or actual innocence. *Id.* at 622-23; *see also Hunter v. United States*, 146 S. Ct. 1702, 1708 (2026) (courts can consider whether to not enforce an appeal waiver on direct appeal if it finds a "miscarriage of justice" would otherwise result).

One exception is that general rule is that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the defendant could have raised the claim on direct appeal. *Massaro*, 538 U.S. at 504. However, attempting to "recast" a sentencing dispute as ineffective assistance of counsel is generally not permitted. *United States v. Calderon*, No. 98-1336, 1999

U.S. App. LEXIS 24307, at *10 (6th Cir. Sep. 27, 1999). If it were otherwise, "then every sentencing dispute not raised on appeal could be repackaged in this fashion and thus frustrate the lawful process for correcting judicial errors that a direct appeal provides." *Id.* Instead, Defendants must assert their claims in the ordinary course of trial and direct appeal. *Id.* (quoting citation omitted); *see also, e.g.*, *Grant v. United States*, 72 F.3d 503, 505 (6th Cir. 1996) ("[N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines . . . ordinarily are not cognizable on collateral review."); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) ("In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent.").

### B. Standard for Ineffective Assistance

A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must prove two things to establish a claim of

ineffective assistance. *Id.* "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance under this prong is "highly deferential" and requires the court to find "in light of all the circumstances," that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689–90. But "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 690.

Second, the defendant must show that his attorney's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To establish prejudice in the guilty plea context, a defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The test "is objective, not subjective" and to obtain relief "a petitioner must convince the court that a decision to reject a plea bargain would have been rational under the circumstances." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir.

2012); *see also United States v. Singh*, 95 F.4th 1028, 1033 (6th Cir. 2024). And to do so, a defendant must "point to evidence contemporaneous with his plea showing it's reasonably likely" he would have rejected the plea and gone to trial. *Singh*, 95 F.4th at 1033 (citing *Lee v. United States*, 582 U.S. 357, 369 (2017)). "[O]nly in 'unusual circumstances' will a defendant who conceded guilt at the plea stage be able to meet this 'high bar.'" *Id.* at 1033–34 (quoting *Lee*, 582 U.S. at 368–69). Because both prongs must be met to establish ineffective assistance of counsel, a failure by the defendant to establish either prong is sufficient grounds to deny the claim.

## III. ANALYSIS

Fluker filed his motions under § 2255 in all three of his criminal cases, 21-20331, 11-20631 and 09-20614, but the documents are identical. Because the motions are evidently intended to apply to each conviction and sentence on equal terms, the court's analysis applies across each case.

### A. Operative Motion

First, there is a question of which motion the court ought to consider. Fluker filed a motion first at ECF No. 173. But he then filed

an amended motion at ECF No. 180. So his first motion is moot and is denied on the basis that Fluker overrode it with his "amended" motion. The United States responded to that amended motion (ECF No. 184), and Fluker later filed a reply (ECF No. 189). But before Fluker filed his reply, he also filed a second "amended" 2255 motion. ECF No. 186. This document is best construed as a motion to amend his § 2255 motion for a second time.

Motions to amend a § 2255 motion turn on the policies of encompassed in Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2242 (explaining that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). A court acts within its discretion in denying leave to amend an "amended" § 2255 motion on account of undue delay – including delay resulting from a failure to incorporate previously available evidence – and ought to pay particular attention to the movant's explanation for their delay. *See Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (internal citations omitted); *Cornell*, 2025 LX 666395, at *5 (applying these standards to a § 2255 motion); *Oleson v. United States*, 27 F.

App'x 566, 568 (6th Cir. 2001) (same). The court may also consider "undue prejudice to the opposing party by virtue of allowance of the amendment." *Cornell*, 2025 LX 666395, at *6 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Oleson*, 27 F. App'x at 569.

First, Fluker has already amended his motion once as a matter of course, consistent with Rule 15(a). *See Oleson*, 27 F. App'x at 568; ECF Nos. 173, 180. But Fluker offers no explanation for the necessity of this second amendment to his motion, brought only after the United States had responded in detail to his first amended motion. He also offers no explanation for the substantial delay between his first amended motion (filed June 18, 2025) and his second (filed September 3, 2025). The Government would be unduly prejudiced by permitting this second amendment because the court would otherwise require this matter to be re-briefed on the amended motion, but there is no reason for that time and energy to be spent pursuing this matter given no explanation from Mr. Fluker why his first amended motion was deficient or why permitting amendment would be just under the circumstances. Nor, in his reply brief to his first amended motion, does Fluker raise the issue at all other than to mention that he filed a "supplemental" amended

motion – again failing to explain the relevance of that "supplement" or what claims it added or modified. The court therefore finds both undue delay as well as undue prejudice to the opposing party, finds that Fluker forfeited argument on this point by failing to raise it beyond a conclusory reference in his subsequent reply brief (filed after his second amended petition), and denies Fluker leave to amend his motion a second time. ECF No. 186, construed as a motion for leave to amend, is denied on that basis, and that leaves ECF No. 180 (the first amended motion) as the operative pleading.

With that in mind, Fluker's subsequent motion to compel production of discovery material (ECF No. 194) is also denied. That motion is premised entirely on the idea that Fluker needs the requested materials to "[t]o properly research, prepare, and present evidence in support of the[] ineffective assistance claims" in his § 2255 motion. ECF No. 194, PageID.1358. What he actually means, then, is that he intends to at some point file a third amended motion under § 2255. The court, however, finds that it can resolve his arguments on the motion as presented, so no factual development is necessary, and in any event the court would not permit such an untimely third amendment.

### B. Analysis

Fluker raises ten separate issues in his amended motion. ECF No. 180. The Government reorganizes those claims into four basic groups, a categorization the court largely adopts. The section below addresses Fluker's § 2255 claims in four broad categories: first, his knowing and voluntary waiver of his appeal rights and entry of his plea (Claim H); second, his guidelines calculations (Claims A, B, C, and J); third, matters relating to forfeiture and restitution (Claims D, F, and G); and fourth, his remaining complaints regarding his sentencing (Claims E and K).

On a § 2255 motion, an evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). The record here conclusively demonstrates that the petitioner is not entitled to relief, so no evidentiary hearing is necessary.

#### i. Appeal Waivers (Claim H)

As a threshold issue, Fluker tries to establish that his plea was not knowing or voluntary. ECF No. 180, PageID.1156. That claim, and related claims related to the validity of his plea agreement, was

procedurally defaulted because he failed to raise it on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). Fluker has not attempted to show cause and prejudice. Even were the court to reach the merits, Fluker's plea colloquy confirms that Fluker knew the appeal and collateral review waivers were a part of his plea agreement, that he understood their nature and application, that he had had all the time needed to consult with his attorney prior to the plea, and that he nonetheless wished to plead guilty pursuant to the agreement. ECF No. 165, PageID.1038-1044.

To the extent that Fluker claims that his plea agreement is invalid due to ineffective assistance of counsel, the court turns to those issues. He argues that counsel should have objected to his plea agreement on the basis of his appeal waiver being invalid on its face, but appeal waivers are generally valid and enforceable. *See United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) (appeal waivers valid absent certain defined exceptions); *cf. Hunter v. United States*, 146 S. Ct. 1702, 1712 (2026) (appeal waivers generally enforceable except for certain conditions, or if enforcement would produce a "miscarriage of justice"). Although he challenges the scope of his waivers as

"overbroad" and "contrary to the sound administration of justice," such arguments are frequently rejected by the Sixth Circuit. *United States v. Elam*, No. 25-1691, 2026 LX 316715, at *3 (6th Cir. June 16, 2026) ("[W]e routinely enforce broad appellate waivers.') (citing *Toth*, 668 F.3d at 378-790). Counsel was not ineffective for electing not to object to these waivers; and again, in any event, Fluker himself agreed to them.

Fluker next argues that counsel was ineffective on the grounds that they failed to negotiate better waivers; his appeal waiver "bar[s] the defendant from seeking relief based on rights that have not yet been recognized by law[,]" and he cannot predict what he might one day hope to appeal about his sentence or conviction. *Id.* Under Fluker's theory, however, no plea containing any appeal waiver could ever be considered knowing and voluntary, because there is always the possibility of unknown future legal or factual developments. Such a result is plainly inconsistent with binding precedent, and counsel, therefore, was not deficient for their performance in negotiating the plea agreement that Fluker agreed to enter into.

Fluker also provides no contemporary or other evidence indicating that any plea deal would have been offered to him without the inclusion

of the appeal waivers. Nor does his motion ever identify a set of circumstances related to waivers under which Fluker alleges that he would have chosen to go to trial instead of pleading guilty, had his counsel not been ineffective. Fluker therefore has not established prejudice. Fluker's plea, his appeal waiver, and collateral review waiver are all valid, and he establishes no exception to invalidate them. This first claim is denied.

Many of Fluker's remaining arguments are simply repackaged attacks on the validity of his sentence and allege specific errors at sentencing. Those claims, properly construed, were waived under his plea agreement, as well as procedurally defaulted by failure to pursue a direct appeal of those issues. The Government's response nonetheless addresses many of these arguments on their merits as far as they are alleged to be ineffective assistance claims, and so the court too generally addresses both points.

### ii. Guidelines Calculations

#### *a. Victim Enhancement (Claim A)*

Fluker alleges that his sentencing attorney, Attorney Grossmann, was ineffective for failing to investigate the victim-number

enhancement under § 2B1.1(b)(2)(A)(i), which applies when there are 10 or more victims of defendant's conduct, and for withdrawing at sentencing the objection that was made by Fluker's prior counsel (Attorney Mihas) regarding this enhancement. ECF No. 180, PageID.1145-1146. He then argues that he was prejudiced by this because "his sentence was increased by the deficient conduct of Mr. Grossmann." In his reply brief, Fluker expands on his theory for the first time, largely consisting of Fluker's view that the guideline commentary (which supports the Government's reading) is not a valid reading of the guidelines text. *See* ECF No. 140, PageID.755.

Throughout all of Fluker's guideline-related objections runs the concern that he is merely repackaging claims disputing his sentence into ineffective assistance claims. In the court's view, Fluker's arguments about the correct way to interpret this Guideline and the Application Note/commentary sounds in a dispute about the correctness of his sentence – an issue that should have been addressed on direct appeal but was not, and is now procedurally defaulted and waived by his collateral review waiver. Nonetheless, the Government addressed

the merits of his repackaged claim, and so the court addresses those points as well.

First, Fluker stipulated in a Rule 11(c) plea agreement to an agreed sentence of 135 months, which would be the case under the agreement regardless of his specific guidelines calculation. ECF No. 131, PageID.746. So Fluker stumbles out of the gate in attempting to show that a different result would be reasonably probable from a change in his guidelines calculation at all. But even accepting that the guidelines could theoretically affect Fluker's sentence,[2] Fluker agreed in his plea and at his plea hearing that there were at least 12 victims of his offenses, and so the enhancement was properly applied according to the terms Fluker himself agreed to.[3] Attorney Grossman's withdrawal of the objection at sentencing reflected an accurate understanding of the

[2] "The Sentencing Guidelines prohibit district courts from accepting Type-C agreements without first evaluating the recommended sentence in light of the defendant's Guidelines range. So in the usual case the court's acceptance of a Type-C agreement and the sentence to be imposed pursuant to that agreement are based on the defendant's Guidelines range." *Hughes v. United States*, 584 U.S. 675, 687, 138 S. Ct. 1765, 1776 (2018) (internal citation omitted, cleaned up).

[3] To this, Fluker says that "Defendant posits in the sentencing context defendant did not agree that his offense involved ten or more victims." ECF No. 140, PageID.754. But this argument goes nowhere fast; if he agreed that there were at least twelve victims, then the government was free to argue that the relevant sentencing enhancement applied. ECF No. 131, PageID.745.

law in this circuit.[4] Fluker also does not claim that he would have gone to trial instead of pleading guilty, had his attorney's alleged error not occurred. Given all of these points, Fluker has failed to establish either unreasonably deficient performance by his counsel or prejudice resulting from counsel's actions. This claim is denied.

*b. Criminal History (Claim B)*

Fluker also claims that Attorney Grossmann was ineffective because he did not object to the scoring of Fluker's prior convictions in his present supervised release cases. ECF No. 180, PageID.1147-1148. Fluker says that these two prior convictions should have been scored as one sentence because there allegedly was no intervening arrest and resulted from offenses contained in the same charging instrument; that his criminal history score and guidelines were improperly increased from the separate scoring of these convictions; and that he was prejudiced because there was a reasonable probability that the outcome

[4] The Sixth Circuit has held that, in cases of fraud involving identity theft, victims of the fraud may be counted for purposes of the (b)(2) enhancement, even if they are not entitled to claim restitution because their monetary losses were reimbursed by their financial institution. *See United States v. Finley*, 600 F. App'x 964, 969 (6th Cir. 2015). To the extent that Fluker apparently believes that case is wrong under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (ECF No. 140, PageID.755), the failure to bring such an argument does not rise to the kind of objectively unreasonable deficiency contemplated by *Strickland*.

of his sentencing would have been different if this error had not occurred. *Id.* In the court's view, this is another run-of-the-mill alleged nonconstitutional error in his sentence "repackaged" as an ineffective assistance claim, and it is denied on that basis. On the merits, it quickly fails. Fluker's convictions from cases 09-20614 and 11-20631 were properly scored as separate convictions. Section 4A1.2(a)(2) of the Guidelines provides that prior sentences "always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2). Even if there was no intervening arrest, prior sentences are still counted separately "unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.*

None of the relevant conditions apply. First and foremost, the relevant offenses were separated by an intervening arrest. Fluker was initially arrested in case 09-20614 on January 7, 2010, based on a December 16, 2009 indictment charging him with four counts of identity theft. ECF No. 146, PageID.910-911; 09-cr-20614 ECF No. 3. Then,

while Fluker was in jail in August and September 2010, he conspired with another individual to be released from jail through fraudulent means, and actually was released through this scheme. ECF No. 146, PageID.912-913. After this further fraud was discovered, Fluker was arrested again. *Id.* Fluker was then charged in an indictment in case number 11-cr-20631 on October 5, 2011 with escape from federal custody. *Id.*, PageID.912-913. So Fluker does not satisfy the threshold condition. But in any case, the sentences resulted from offenses brought in separate charging documents and the sentences were not imposed on the same day,[5] so Fluker also does not satisfy either alternate condition.

*c. U.S.S.G. § 5G1.3 (Claim C)*

Fluker asserts that § 5G1.3(b) of the U.S. Sentencing Guidelines should have been applied to his case, and that Attorney Grossmann was ineffective for failing to argue for its application. ECF No. 180, PageID.1153-1154. Section 5G1.3(b) – which credits time served and

[5] Fluker was sentenced by Judge Cox in case 09-cr-20614 in October 2010 (ECF No. 146, PageID.910), and by Judge Goldsmith in case 11-cr-20631 in April 2012 (*id.* at PageID.912-913).

requires concurrent sentencing – applies where an undischarged term of imprisonment “resulted” from another offense that constitutes relevant conduct to the current case. Put differently, if a defendant has already been sentenced for a separate offense, and that offense was considered “relevant conduct” to the current case, that defendant would be entitled under § 5G1.3(b) to credit for time served and a concurrent sentence. *See United States v. Foster*, 527 F. App’x 406, 408 (6th Cir. 2013).[6]

Fluker believes that § 5G1.3(b) would have been applied to his case, and his sentence would have been reduced, had the point been argued. In his view, when he was sentenced in his 2021 case on March 19, 2024, a term of imprisonment began at the moment the court pronounced its judgment. ECF No. 140, PageID.756. In his theory, his 2021 case constitutes “relevant conduct” for his supervised release violations, and that time would not otherwise be credited against his sentence for supervised release.

[6] The government seems to read the guideline slightly differently – that the entire guideline in subsection (b) only applies if time has been “already served” on the sentence for relevant conduct. ECF No. 134, PageID.704. The court reads, in light of *Foster*, the two subsections (§ 5G1.3(b)(1) and (b)(2)) to be on equal footing; that is, if the primary condition in subsection (b) is satisfied, then both (b)(1) and (b)(2) apply.

This argument is in substance once again within the scope of his appeal waiver and was procedurally defaulted by his failure to pursue challenges to his sentencing on appeal. On the merits of his repackaged ineffective assistance claim, it fails. Fluker never explains how the 2021 offense constituted relevant conduct to his supervised release violations, but it is not necessary to unpack that theory. It is enough to say that Fluker cannot show prejudice from the alleged failure to raise this objection. Even assuming for the moment that he is right that this Guideline should apply, if his point is that some already-served time on his 2021 offense should have been credited to him, then he is simply wrong; he was sentenced for his supervised release violations in the same proceeding as his 2021 offense. He had "already served" no time at all on that undischarged term of imprisonment and he would not be entitled to any sentence adjustment. If his point, on the other hand, is that he ought to have been sentenced concurrently on all three sentences, then he did not suffer prejudice because the court did, in fact, impose concurrent sentences in all of Fluker's cases. ECF No. 157,

PageID.964.[7] But even so, it is clear that Guideline does not apply to Fluker's supervised release; instead, the policy statement in § 5G1.3(d) applies, which states that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively[.]" This statement "applies in cases in which the defendant was on federal . . . supervised release at the time of the instant offense[.]" U.S.S.G. § 5G1.3, cmt. n.4(C). And under those circumstances, the Commission's recommendation is that "the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." *Id.* So at best, the applicable Guideline permits both concurrent or consecutive sentencing; and contra Mr. Fluker's argument, the commentary recommends consecutive sentencing. In light of all of these facts, Fluker cannot show either prejudice or objectively unreasonable performance by counsel.

[7] Even if it did apply, the court is not required to follow § 5G1.3 in determining whether to impose a concurrent or consecutive sentence. *Nettles v. United States*, No. 1:25-cv-617, 2026 LX 339302, at *15 (W.D. Mich. July 8, 2026) (citing *United States v. Gomez*, 129 F.4th 954, 963 (6th Cir. 2025)).

### *d. Loss Calculation (Claim J)*

Fluker claims that Attorney Grossman was ineffective because he failed to object to the PSR's loss calculation, which called for the application of a 16-level enhancement for loss of at least $1,500,000 but less than $3,500,000 under § 2B1.1(b)(1)(I). ECF No. 180, PageID.1157-1160. Fluker further claims that his guidelines should have been based on an alleged "actual loss" amount of $500,000, versus an alleged "intended loss" amount of $2,500,000. *Id.* He then claims that he was prejudiced by Attorney Grossman's failure to object to the loss amount in the PSR, because a lower loss calculation would have reduced his advisory guidelines range. *Id.* Again: this claim is merely a sentencing dispute recast as an ineffective assistance claim. On that view, it is within the scope of his appeal waiver and was procedurally defaulted. On the merits, Fluker again fails to show either prejudice or any ineffective assistance by his attorneys with respect to this claim.

First, Fluker cannot show prejudice from any alleged error as to his guideline calculation – including as to loss amounts – because, as explained above, he agreed to a set sentence of 135 months' imprisonment in his plea agreement. Also as described above, in his

plea agreement Fluker agreed to a loss of amount of at least $2,500,000; he specifically agreed to recommend the application of the 16-level guidelines enhancement that he now complains of; and he fails to allege that he would have gone to trial absent the alleged ineffective assistance here.

In his reply brief, Fluker perhaps recognizes that his plea agreement forecloses his arguments, because he tries to pivot to a slightly different argument, and claims instead that Attorney Mihas inaccurately advised him during plea negotiations, to his detriment. ECF No. 140, PageID.758. This claim is both procedurally waived and wrong on the merits. As a general rule, this court does not entertain issues raised for the first time in a reply brief. *United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004). No mention of deficient performance by Mr. Mihas on this point is mentioned in Fluker's original motion (ECF No. 180, PageID.1157-60), and this point was raised for the first time in reply. Additionally, this pivot to focus on pre-plea advice (rather than counsel's objections at sentencing) is rebutted by Fluker's plea colloquy. Fluker testified during the plea colloquy that he was satisfied with Mihas' advice. ECF No. 165, PageID.1027. But

anyway, Fluker's actual argument is that, in his view, this loss guideline enhancement is based on an incorrect reading on the guideline commentary, and so Mihas (and Grossman, by extension) should not have advised him that the guidelines would apply to "intended loss."[8] That argument has been rejected on its merits by the Sixth Circuit. *United States v. Xiaorong You*, 74 F.4th 378, 397 (6th Cir. 2023) ("The context and purpose of the Guidelines clarify that 'loss' can also mean intended loss in the § 2B1.1 context"). So it was not objectively unreasonable for Attorneys Mihas or Grossman to act as they did or to advise Fluker that the guideline would apply to intended loss, and Fluker suffered no prejudice from its application.

**iii. Forfeiture and Restitution**

*a. Application of Forfeited Amounts to Restitution (Claim D)*

Fluker next argues that Attorney Grossmann was ineffective for not "argu[ing] that the forfeiture of funds should have been credited as

[8] For that proposition, he says "'whether the district court erred in relying on the guidelines commentary to calculate a defendants guideline range presents a legal question.' United States v . Riccardi, 989 F.3d 476, 481 (6th Cir 2021)." ECF No. 140, PageID.758. No such quote appears in that case.

an offset to the restitution order this court imposed," that the court could have entered such an order, and that he was prejudiced because such an offset "would reduce the amount of restitution this court imposed." ECF No. 180, PageID.1150-1151. He also argues that Attorney Grossmann should have filed an objection to the government's preliminary order of forfeiture, and he complains that Attorney Grossman allegedly withdrew Attorney Mihas's prior PSR objection regarding this issue at sentencing. *Id.* Fluker's claims here also fail because he procedurally defaulted and waived these claims, and because he fails to meet his burden to show ineffective assistance.

First, Fluker cannot demonstrate prejudice because the court does not have authority to grant remission or restoration of forfeited assets to victims, regardless of whether defense counsel makes such a request at sentencing. When property is forfeited to the government, as it was here, the ability to determine what happens to that property, including whether the property will be applied toward restitution, is controlled by the executive branch of the government, not the courts. *See* 21 U.S.C. § 853(i); *see also United States v. One 1961 Cadillac et al.*, 337 F.2d 730, 733 (6th Cir. 1964) (explaining that the power to apply forfeiture to

restitution obligations "was committed to the discretion of the executive. . . . The courts have not been granted jurisdiction to control the action of the executive . . . ."). Because the disposal of forfeited assets is within the exclusive jurisdiction of the executive branch, federal courts have rejected requests by both defendants and victims to require the use of forfeited assets to pay restitution. *See, e.g.*, *United States v. Joseph, III*, 743 F.3d 1350, 1355 (11th Cir. 2014) (collecting cases); *United States v. Zaranek*, No. 07-50091, 2007 U.S. Dist. LEXIS 39188, 2007 WL 1455923 at *1 (E.D. Mich. Apr. 26, 2007).

As for Fluker's argument that "Mr. Grossmann withdrew prior counsel's objection relating to this claim at defendants sentencing hearing[,]" that is affirmatively rebutted by the record. Attorney Grossmann did not "withdraw" the objection at sentencing, but rather simply stated that he had no new argument or position with respect to that objection. ECF No. 161, p.7. The choice of whether to argue additional points or stand on one's written submissions is a reasonable choice by counsel that does not demonstrate ineffectiveness.

Finally, Fluker argues that Attorney Grossman should have informed him about the preliminary order of forfeiture, and failed to

provide him additional information about that order. ECF No. 180, PageID.1151. But Fluker identifies no prejudice stemming from this alleged ineffectiveness. Nor could he, because the material terms were the same he had already accepted in his plea agreement. *See* ECF No. 148, PageID.934-936; ECF No. 131, PageID.751-52. This claim is denied.

*b. Immediate Commencement of Restitution (Claim F)*

Fluker claims that the court erred when it ordered restitution payments to begin while he is incarcerated, apparently on the ground that the court lacks authority to order restitution payments other than as a condition of supervised release. *See* ECF No. 180, PageID.1153-1154. Fluker waived this claim because the claim is covered within the scope of his appeal waivers; Fluker's argument in his motion makes no mention of counsel or counsel's performance at all, and thus does not raise any cognizable claim on collateral review.[9] Fluker also

[9] In reply, Fluker appends: "Fluker's counsel Attorney Grossmann was ineffective for failing to object to the district courts failure as outlined herein." ECF No. 140, PageID.757. But this argument cannot be raised for the first time in reply; in his motion he failed to connect this argument to ineffective assistance, and his conclusory attempt to do so in reply merely illustrates that the argument is in substance one that alleges nonconstitutional sentencing error.

procedurally defaulted this claim because he also did not raise it on direct appeal and provides no reason why this could not have been raised on direct appeal. Fluker's reply briefing adds additional arguments on the merits, but gives no reason to avoid the procedural default. Anyway, he is wrong on the facts and the law: 18 U.S.C. § 3572(d) states that "[a] person sentenced to pay . . . restitution . . . shall make such payment immediately," unless the court finds that the interests of justice requires a different payment schedule. The court acted within its authority to order immediate payment in full of restitution, and it also did so with defendant's consent under his plea agreement. ECF No. 131, PageID.748. This claim is denied.

*c. Restitution Amounts (Claim G)*

Fluker also argues that his due process rights were violated when the court corrected in its written judgment the sum of Fluker's total restitution obligations, even though the court correctly pronounced each of the underlying restitution amounts for each of the victims at sentencing and in the judgment. ECF No. 180, PageID.1154. This claim about Fluker's sentence is within the scope of Fluker's appeal waiver, and was not raised on direct appeal. Fluker's motion makes no

mention of Attorney Grossman's performance at all. *See id.* The claim was thus both procedurally defaulted and waived.[10]

Even if it were not, Fluker's counsel acted reasonably and Fluker suffered no prejudice from counsel's actions. At sentencing, the government stated an incorrect total restitution sum of $3,809,176 for the individual restitution amounts, which was repeated by the court (ECF No. 161, p.12, 20), but this mathematical error was realized prior to entry of the judgment and was corrected in the final written judgment. ECF No. 157. Because the individual amounts of restitution ordered to each victim on the record at sentencing were correct, the clerical error was limited to the summation of these otherwise correct individual amounts, and the final restitution amount remained consistent with the terms of the Rule 11 plea agreement. Defense counsel Grossman thus stated that "he would not object to the entry of the correct summation amount in the judgment." ECF No. 134, PageID.702. The amount owed to each victim was correctly stated at

---

[10] Again, Fluker tries to correct that in reply: "Attorney Grossmann's failure to object to this courts ambiguous restitution order renders his representation deficient." ECF No. 140, PageID.758. But his belated correction shows that the substance of the argument was a sentencing dispute properly brought on direct appeal.

sentencing, and the court's correction of the summation error in the judgment was clerical in nature. Fluker's argument rests entirely on the claim that the oral judgment was "ambiguous" due to this mismatch between the correct individual amounts and correct total sum, and his attorney was deficient for allowing it. ECF No. 140, PageID.758. But as explained, the total sum would not have changed the correct imposition of restitution to each individual victim (Fluker's restitution obligation to each of his victims was unchanged by the correction), so as far as this purports to be an ineffective assistance claim, Fluker suffered no prejudice from the correction of the sum total, and Attorney Grossman acted within an objectively reasonable role as counsel to agree to that correction. This claim is denied.

#### iv. Remaining Sentencing Issues

Fluker's final two arguments do not fit neatly into the above categories, but broadly object to two remaining alleged infirmities in his sentencing.

*a. Standard Conditions of Supervised Release (Claim E)*

Fluker alleges that this counsel was ineffective for failing to object to this court's incorporation by reference of the standard supervised release conditions 10 and 12, which he alleges violate his rights. ECF No. 180, PageID.1151-1153. First and foremost, supervised release conditions fall within the scope of Fluker's appeal waiver, and was procedurally defaulted. *United States v. Booker*, No. 22-3160, 2023 U.S. App. LEXIS 3724, at *11 (6th Cir. Feb. 15, 2023) (noting that an agreement to waive the right to appeal one's sentence includes supervised-release conditions) (collecting cases).

On the merits, Fluker first objects to the court's incorporation by reference of the standard supervised release conditions as violative of his due process rights as a general matter, but he is wrong. "[L]isting the standard conditions either in a districtwide general order or in the presentence investigation report and then adopting them by reference provides defendants with sufficient due process." *United States v. Hayden*, 102 F.4th 368, 374 (6th Cir. 2024). At sentencing in this case, the court orally announced that the defendant shall abide by the

standard conditions as adopted by the United States District Court for the Eastern District of Michigan, in addition to reading each of the special conditions. ECF No. 161, p.21. Fluker claims in conclusory fashion that Grossman objecting to the imposition of all thirteen standard conditions would have changed which conditions the court imposed, but in substance, Fluker only claims that two conditions should not have been imposed: numbers ten and twelve. The court accordingly finds that Fluker did not identify any specific prejudice or deficiency as to the other eleven conditions, and his speculation that some unidentified conditions may not have been imposed fails to carry his burden to establish prejudice on an ineffective assistance claim.

Turning then to the two specific conditions he identifies: condition ten prevents Fluker from owning or having access to a firearm. ECF No. 157, PageID.966. Condition twelve states that, "If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk." *Id.* As to each, the Government

correctly notes that Fluker is essentially attempting a pre-enforcement challenge; he is not currently subject to any of his supervised release conditions because he is not on supervised release. In the context of challenges to supervised release conditions, the general rule is that "conditions of supervised release may be ripe for appellate review immediately following their imposition at sentence." *United States v. Lee*, 502 F.3d 447, 449-50 (6th Cir. 2007). But in some cases, a defendant's "rights will be better served if his appeal is preserved until after he is released from prison." *See id.* at 450. This is true particularly where imposition of a particular condition of supervised release is "potential" and contingent on some future action, or if other contingent future developments will render the dispute moot or offer determinative answers. *See id.*

This observation is, on this motion, fatal to Fluker's claim against condition twelve. That condition is imposed if, and only if, "the probation officer determines that [Fluker] pose[s] a risk to another person (including an organization)[.]" ECF No. 157, PageID.966. The Sixth Circuit has repeatedly found challenges to a probation officer's discretionary decisions, contingent on some future potential

circumstance, to be unripe. *United States v. Lindahl*, No. 22-2117, 2024 U.S. App. LEXIS 2368, at *9 (6th Cir. Feb. 1, 2024) ("when a condition merely has the 'potential' to occur, rather than being deemed mandatory, it is likely unripe."); *see also Lee*, 502 F.3d at 450 (concluding that the defendant's "contention that he will actually be subject to penile plethysmograph testing is mere conjecture" and "the occasion may never arise"); *United States v. Nichols*, 802 F. App'x 172, 184 (6th Cir. 2020) (concluding that a defendant's challenge to conditions requiring a polygraph test was unripe where the probation officer had "discretion in imposing the testing."); *United States v. Massey*, 349 F. App'x 64, 70 (6th Cir. 2009) (concluding that the defendant's challenge to his supervised release conditions was not ripe because two tests were simply "options that [the defendant's] probation officer may choose" and the use of those tests was "optional"). So Fluker's present objection to condition twelve is unripe, and therefore Fluker cannot show prejudice or objective ineffectiveness by Grossman's alleged failure to object to this specific condition at sentencing.[11]

[11] In any event, the Sixth Circuit has held that such conditions are not unconstitutionally vague, so Fluker cannot show prejudice on the merits either. *United States v. Campbell*, 122 F.4th 624, 634 (6th Cir. 2024).

As for condition ten, Fluker advances a theory that he cannot be constitutionally disarmed under the test explained in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). Fluker has tried this theory elsewhere before the undersigned. *See Fluker v. Driscoll*, No. 24-13322, 2026 LX 96826, at *9 (E.D. Mich. Jan. 22, 2026) (denying Fluker's claim for declaratory judgment on a nearly identical theory on standing and ripeness grounds), *appeal pending* No. 26-1245 (6th Cir. 2026). As this court explained in that decision, Fluker's claims under *Williams* are not ripe because he lacks the legal ability to possess a gun while incarcerated, independent of any other legal bar (such as, for present purposes, his supervised release conditions). The court also notes that a supervised release condition is, as a matter of law, a factor that changes the *Williams* analysis and weighs against Fluker's argument on the merits. *See United States v. Goins*, 118 F.4th 794, 802 (6th Cir. 2024) ("controlling precedent in this circuit[] also supports the temporary disarmament of those on probation, parole, or supervised release"); *but see United States v. Hostettler*, 170 F.4th 539, 545 (6th Cir. 2026) (holding that supervised release alone is not dispositive under *Goins*). On the merits, the court refrained from ruling on his theory in his

declaratory judgment action, and again does so here; the claim remains unripe for the reasons explained here and in that decision.[12] Once his term of supervised release begins, Fluker can seek to have his conditions modified by the court "at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. 3583(e)(2); ECF No. 134, PageID.710. At this time, he has suffered no prejudice from the imposition of these conditions. Fluker's counsel was not ineffective for failing to raise these issues at that moment, and this claim is denied.

[12] Nonetheless, it is worth pointing out that Fluker's spouse advanced a similar argument in that case. Fluker's spouse, Ricky Jones, aided Fluker's escape from jail by authoring the fraudulent document that secured his escape. This court concluded that "escape from jail poses a danger to the community. Just as burglary is a dangerous crime because it creates the possibility of a violent confrontation with an occupant or law enforcement, '[h]elping someone break out of custody involves the possibility of various violent confrontations, including with jail staff, law enforcement, and members of the public.' And assisting in an act of escape shows Jones' 'clear unwillingness to comply with legal obligations and law enforcement and justify a finding of dangerousness.'" *Id.* at *11-12 (quoting citations omitted). The court thus found that section 922(g)(1) is constitutional as applied to Jones. *Id.* Even assuming, for the moment, that supervised released status alone cannot impinge on Fluker's Second Amendment rights, and also setting aside Fluker's other criminal history, it is hard to see how Fluker can show prejudice by Grossman's performance under these facts.

*b. Subject Matter Jurisdiction over Supervised Release Sentence and Length of Supervised Release Sentences (Claim K)*

Fluker alleges that his counsel was ineffective for failing to object to the court's imposition of sentences in his supervised release cases, on the ground that the sentences were imposed after the expiration of his terms of supervised release to an extent that was not reasonably necessary, and the court thus lacked subject matter jurisdiction to sentence him under 18 U.S.C. § 3583(i). ECF No. 180, PageID.1160-1161.[13] He further alleges that this failure to object resulted in his sentence being increased by 24 months. *Id.*, PageID.1162. Not to belabor the point, but this claim is functionally a nonconstitutional dispute over an alleged sentencing error that was within the scope of Fluker's appeal waivers and was procedurally defaulted.

On the merits, Fluker's argument is factually wrong. Fluker's sentence was not increased by 24 months; his sentences for his

[13] The Government does not contest that the statute is jurisdictional, and a number of Circuits have said just that. *United States v. Gulley*, 130 F.4th 1178, 1184 (10th Cir. 2025) (collecting cases); *see also United States v. Mont*, 723 F. App'x 325, 329 (6th Cir. 2018).

supervised release violations were imposed concurrently to his sentence for his 2021 case. Case 4:09-cr-20614, ECF No. 117, PageID.443; Case 4:11-cr-2063, ECF No. 58, PageID.178. Thus, his total term of imprisonment was not increased as a result of the sentences imposed on his supervised release cases, and defendant suffered no prejudice from any delay in imposition of his supervised release sentences. Fluker also fails to allege that he would have foregone a plea in his supervised release matters absent this alleged ineffective assistance. On these grounds alone, this claim can be denied.

On the law, he is also wrong. 18 U.S.C. § 3583(i) provides that the court's authority to revoke supervised release and order the defendant to serve an additional term of imprisonment "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration" if a warrant was issued alleging the violation prior to the expiration of the original supervised release term. Courts have found that delay is "reasonably necessary" when it is due to the adjudication of other criminal matters that are related to the question of whether the defendant violated his supervised release conditions. *See, e.g.*, *United*

*States v. Madden*, 515 F.3d 601, 606-608 (6th Cir. 2008) (finding "ample reason" for 3-year delay, where delay was due to the adjudication of separate criminal charges arising from the same incidents that were the subject of his alleged supervised release violation and thus "the outcome of these proceedings directly related to whether [defendant] had actually violated the terms of his supervised release, and that the alleged conduct occurred over several months in the middle of defendant's term of supervised release). There is overwhelming evidence in the record showing that is exactly the case here. Fluker's supervised release violation petition alleged several violations, including that Fluker had violated the condition requiring him to not commit another crime, with reference to the conduct set forth in the federal criminal complaint issued against Fluker several months prior. *E.g.*, 09-cr-20614 ECF No. 74, PageID.310-311. Delaying Fluker's supervised release proceedings to allow for the resolution of the related new criminal charges was squarely "reasonably necessary" under § 3583(i) and *Madden*. Fluker's counsel did not act unreasonably in

agreeing to each adjournment, nor in deciding not to bring a subject matter jurisdiction argument.[14] This claim is denied.

## IV. CONCLUSION

For the reasons explained above, the court **DENIES** the motion brought under 28 U.S.C. § 2255 (ECF No. 180). The motion at ECF No. 173 is **DENIED AS MOOT**, and the second amended motion at ECF No. 186, construed as a motion for leave to amend, is **DENIED**. The corresponding motions in case numbers 11-20631 (ECF Nos. 64, 70, 76) and 09-20614 (ECF Nos. 124, 129, 137) are denied accordingly.

Under 28 U.S.C. § 2253(c)(1)(B), the court must determine whether a certificate of appealability should issue. A certificate should issue if the petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the

[14] Fluker also has trouble showing he suffered any prejudice from the adjournments (ECF No. 134, PageID.709), but it is not necessary to discuss that point given that he also does not allege that he would have foregone a plea in his supervised release matters and gone to trial absent this alleged ineffective assistance.

standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000); *Murphy*, 263 F.3d at 467. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Here, as explained in detail above, Fluker's arguments are foreclosed by the waivers in his plea agreement, by the facts he pleaded guilty to, by his agreeing in his plea to particular aspects of his sentence, and by his procedural default in not raising these issues on direct appeal. To the limited extent some of his claims might be generously construed to survive those waivers and procedural barriers, he has failed to show either that his counsel's performance fell below an objective standard of reasonableness or that he suffered prejudice from his counsel's conduct; both problems independently foreclose any remaining claims. No reasonable jurist would decide the matter differently, and a certificate of appealability will not issue.

Accordingly, Fluker's motion to compel production of discovery related to this motion (ECF No. 194) is **DENIED**.

As for Fluker's motion for return of property (ECF No. 190), the Government's response primarily (though not entirely) rests on the ground that Fluker's § 2255 petitions remain pending, and so the government has a continued interest in the property as evidence (ECF No. 191). Each of Fluker's § 2255 motions are resolved before this court by this opinion and order, so that particular ground may be moot. The court therefore orders the Government to supplement its response to that motion, within 21 days of entry of this order, in light of this decision.

**SO ORDERED**.

Date: August 10, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge